## Case No. 7,793.
### KING v. FRENCH.
[2 Sawy. 441;[1] 5 Chi. Leg. News, 470.]
Circuit Court, D. Oregon. June 2, 1873.

JUDGMENT BY CONFESSION—SUIT TO QUIET TITLE—PROCEEDING TO AMEND RECORD.

1. Where a confession of judgment was filed, and judgment endorsed on the statement, but not entered in the judgment book, and an execution issued thereon: *Held*, that there was no judgment to support the execution, and therefore a sale of property thereunder was invalid and of no effect.

2. A party in possession cannot maintain a suit to quiet his title under section 500 of the Code, unless it appears that he has some legal or equitable interest in the property or claim thereto.

3. A motion or proceeding to amend the records of a state court in a particular case must be made or brought in such court, and cannot be removed to a national court.

[Bill by Estelle King against Joseph M. French.]

James G. Chapman and David Goodsell, for complainant.

W. W. Page, for defendant.

DEADY, District Judge. This suit was commenced on March 6, 1872, in the circuit court for the county of Multnomah, to quiet the complainant's title to lots 1, 2 and 3 in block 221, in the city of Portland; and on June 10, on application of the defendant, who is a citizen of California, was removed to this court.

On September 6 complainant filed an amended bill in this court, from which it appears: That on June 25, 1850, Daniel H. Lownsdale, Stephen Coffin and W. W. Chapman, being in the possession of the premises, conveyed the same to said Daniel H., by deed, with a covenant of warranty against all persons, the United States excepted, and another to convey the title of the United States, if they ever obtained it.

That on August 30, 1850, said Daniel H. conveyed said premises to William M. King; that on August 6, 1855, said King being indebted to Thomas J. Carter in the sum of $1,350 and interest thereon for about a year, duly made and filed a statement authorizing the entry of a judgment by confession in favor of said Carter for said sum; that the clerk of said court endorsed a judgment on said statement for said sum, and entered the same in the lien docket, but omitted to enter any judgment thereon in the judgment book of said court; and that the "judgment roll of said confession" has, since January 2, 1857, "been lost or abstracted from its proper custodian."

That said Carter and King afterward "recognized said judgment by confession, as of binding force," and that upon an execution issued out of said court "upon said confession of judgment," said block 221 was sold to said

Carter, who afterward, on January 5, 1857, received the sheriff's deed therefor, and caused the same to be recorded on February 9, 1857.

That complainant is a child of said King; that on February 4, 1857, said Carter and wife conveyed the premises in controversy to complainant, and the remainder of the lots in said block 221 to the other minor children of said King, which deed was duly recorded; that in 1857-8 said King enclosed said block, and built a house thereon, and thereafter lived in the same with his family, including the complainant, until about November 8, 1869, when he died; and that during such residence said King "recognized and declared said lots 1, 2 and 3 to belong to the complainant."

That on October 8, 1869, said King made a deed to Hamilton Boyd for lots 1, 2, 3 and 4 of said block 221 for the pretended consideration of $3,000, but that the true consideration therefor was about $108; that the real value of said property was $4,000, and said deed was procured by fraud, and passed no estate to said Boyd.

That said Chapman, after the execution of the deed of June 25, 1850, and before September 1, 1853, became the donee of the United States under the donation act of September 27, 1850, of the tract of land, including said block 221, and to which, in 1862, he received a patent conformably thereto; that thereafter complainant, by reason of the premises, was entitled to a further conveyance from said Chapman for said lots, but that by the wrongful representations of said Boyd, said Chapman, "by mistake," made such conveyance to said Boyd on March 5, 1850.

That the complainant is in possession of the premises, but neither said Boyd nor French have ever been; and that each of them, at the date of the respective conveyances aforesaid to them, "had knowledge and good reason to inquire and be informed of complainant's claim and title to said lots 1, 2 and 3." The bill concludes with a prayer that it be declared that the defendant holds the legal title to the premises in trust for complainant, and "be compelled to convey the same to her."

On February 15, 1873, the cause was heard on the bill and a general demurrer thereto, and submitted. On the argument, counsel for defendant made the point that, as there was no judgment entered on the confession "in the judgment book," there was no judgment to support the execution upon which the sale to Carter was made, and therefore both it and the conveyances under it to Carter and complainant were void and of no effect.

In reply, counsel for complainant maintains that it is immaterial whether the judgment was entered in the judgment book or not. Carter was entitled to have it entered, and that gives his grantee a right that ought to be protected; and that courts do not permit parties to be prejudiced by the acts, omissions or mistakes of its officers.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

The Civil Code of 1854, which was in force until June, 1863, provided for the entry of a judgment by confession without action. Among other things, the defendant was required to sign and verify a statement, authorizing the entry of a judgment for a particular sum. This statement was to be filed with the clerk of the court in which the judgment was to be entered, who was required to "endorse upon it and enter in the judgment book a judgment for the amount confessed." The verified statement with the judgment endorsed thereupon became "the judgment roll." St. Or. 1855, p. 117. The judgment book was one which the clerk was required to keep for the entry of judgments, "in which each judgment was to be entered." Id. 119. Section 1 of the chapter on executions provided: "The party in whose favor judgment is given may, at any time within five years after the entry thereof, issue a writ of execution for its enforcement, as prescribed by statute." Id. 120.

The authority to issue the execution upon which this sale took place was derived from this statute. Its language is plain. It does not give the writ in any case until after the entry of the judgment. The place and manner of making "entry of judgment" is also prescribed by the statute. They are to be entered in "a book, * * * to be called the 'judgment book,'" Now, an endorsement on "the statement" is not an entry in any book—let alone the judgment book. This endorsement on the statement is probably intended as a substitute for the copy of the judgment entry required to be attached to the papers in making up the judgment roll in other cases. In this view of the matter, the statute should be construed as if it read—"who shall enter in the judgment book a judgment for the amount confessed, and also endorse the same upon the statement."

But however this may be, until the judgment is entered in the judgment book, there is no judgment to authorize or support an execution. This entry is a condition precedent to the right to the writ. A party cannot enforce a judgment until "after the entry thereof," and an execution issued before such entry is void, and a sale under it of no effect.

The maxim "that equity looks upon that as done which ought to have been done," is also invoked to support this execution. But so far as I am advised, the maxim has no application to errors and omissions in the record of judicial proceedings. If this were otherwise, there would be no necessity for applications to courts to amend the records of their proceedings, or for leave to make entries nunc pro tunc.

The general proposition that "courts do not permit parties to be prejudiced by the acts, omissions or mistakes of its officers," is admitted; but its relevancy to the case before the court is not perceived. The way in which courts prevent parties being prejudiced by such means, is by allowing amendments when the ends of justice require it, so far as they can, without injury to the rights of innocent persons. But this is not a proceeding to obtain an amendment of the record in Carter v. King [unreported], by an entry of a judgment nunc pro tunc, and if it were, it would avail nothing; for that is a matter exclusively within the cognizance of the courts where the confession is alleged to have been filed. This suit is brought upon the assumption that the record in Carter v. King is sufficient, as it exists, to support the execution upon which the sale to complainant's grantor was made.

But counsel insists that this cause having been removed into this court by the defendant, he ought not to be allowed to question the power of this court to amend the record of the state court.

This is a very singular proposition. First, it erroneously assumes that this was a proceeding commenced in the state court to amend the record in Carter v. King; and, second, that such a proceeding could be removed to this court under any circumstances. Nor is it necessary that the defendant should question the power of this court to amend the records of another. No such power exists in any court.

At the date of the deed from L. C. and C. to King, neither of the grantors therein had any interest in the premises, except the bare possession. The special covenant therein for further assurance was a good contract to convey the land when the covenantors got the title from the United States. But it did not pass the title. It only gave a right to King or his assigns to have a conveyance thereof. Therefore the legal title never was in either King or Carter. Chapman having acquired the legal title to the premises from the United States, conveyed the same to Boyd as the assignee of King, who conveyed it to the defendant. The legal title is therefore in the latter.

The bill also contains an allegation to the effect that the conveyances from King and Chapman were improperly obtained, but no particular facts are stated to support this general averment, except the inadequacy of price in the purchase from King. But mere inadequacy of price is not sufficient to vitiate or set aside a sale. Holmes v. Holmes [Case No. 6,638].

Nor does it appear from the bill how the complainant has any right to question the sale from King to Boyd, or the conveyance from Chapman to the latter. The alleged sale to Carter being void, she acquired no interest in the premises by the deed from him to herself, and is therefore a stranger to the title.

True, she alleges that she is the child of King, but she does not state that she is his heir, or that the property, or any interest therein, was devised to her by her father, or descended to her upon his death. Stark v. Star, 6 Wall. [73 U. S.] 410, was, like this, a suit brought under section 500 of the Civil Code to quiet title. In delivering the opinion of the court, Mr. Justice Field said:

"We do not, however, understand that the mere naked possession of the plaintiff is sufficient to authorize him to institute the suit, and require an exhibition of the estate of the adverse claimant, though the language of the statute is, 'that any person in possession, by himself or his tenants, may maintain' the suit. His possession must be accompanied with a claim of right, that is, must be founded upon title, legal or equitable, and such claim or title must be exhibited by the proofs, and, perhaps in the pleadings also, before the adverse claimant can be required to produce the evidence upon which he rests his claim of an adverse estate or interest."

The complainant having stated the grounds of her claim to an equitable title or estate in the premises in her bill, as well as the defendant's estate therein, it appears that the defendant is the legal owner of the lots, and that the complainant, although in possession, has no interest in the premises or right thereto, and therefore her bill is dismissed.